# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | | |
|---|---|---|
| Daquan Morrison and Shaniqua Campbell, | ) | Civil Action No.:   3:22-cv-02306-CMC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **(JURY TRIAL DEMANDED)** |
| Brookfield Properties Retail, Inc. and | ) | |
| Andy Frain Services, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiffs above named, by and through their undersigned counsel, hereby make the following claims and allegations:

## PARTIES, JURISIDICTION, AND VENUE

1.     Plaintiffs are husband and wife and residents of the State of New York.

2.     Upon information and belief, Defendant Brookfield Properties Retail, Inc. (hereinafter "Brookfield") is a global real estate services company incorporated in Delaware that, as part of its business, owns and operates retail shopping malls across the world, including Columbiana Centre Mall ("Subject Premises" or "Columbiana Centre") located at 100 Columbiana Cir, Columbia, SC 29212. At the time of the subject incident, Brookfield owned, operated, controlled, and/or managed Columbiana Centre.

3.     At the time of the subject incident, Brookfield made operational decisions at Columbiana Centre, including but not limited to decisions regarding security personnel, security related expenditures, and security related policies.

4.    As owners and operators of Columbiana Centre, Defendant Brookfield had a non-delegable duty to maintain Columbiana Centre Mall in a safe, secure, and reasonable manner.

5.    Upon information and belief, Defendant Brookfield had agents, representatives, and employees, whose acts and omissions complained of in this Complaint, were performed during the course and scope of such employment and/or agency. Their actions and inactions are imputed to Brookfield under the doctrine of *respondeat superior*.

6.    Service can be made on Defendant Brookfield by serving its registered agent, Corporation Service Company at 508 Meeting Street, West Columbia, South Carolina 29169.

7.    Upon information and belief, Defendant Andy Frain Services, Inc. (hereinafter, "AFS") is an Illinois corporation contracted to provide security-related services at Columbiana Centre at the time of the subject incident and at all relevant times contained hereto.

8.    At all times relevant, upon information and belief, Defendant Brookfield contracted with Defendant AFS to provide security services to Brookfield and its customers at Columbiana Centre. This contract and agreement created an agency relationship between Brookfield and AFS, and all actions and inactions of AFS and its agents and/or employees are also imputed to Brookfield through agency and/or apparent authority.

9.    Service can be made on AFS by serving its registered agent, C T Corporation System at 2 Office Park Court Suite, 103, Columbia, South Carolina 29223.

10.    The negligent acts, omissions and liability of all Defendants also refer to and include each Defendants' agents, principals, employees and/or servants, both directly and vicariously, pursuant to principles of corporate liability, apparent authority, agency, ostensible agency and/or *respondeat superior*.

2

11.    That both above-named Defendants are jointly and severally liable as to all damages alleged herein since their negligent, reckless, and wanton acts and omissions, singularly or in combination, were a direct and proximate cause of the Plaintiffs' damages and injuries.

12.    A substantial part of the acts or omissions giving rise to this action and associated claims occurred in both Lexington and Richland Counties of South Carolina.

13.    This Court has jurisdiction over this action based on 28 U.S. Code § 1332, as the action is between citizens of different states and alleged damages far exceed the amount in controversy requirement set forth in the same statute.

**BACKGROUND INFORMATION**

14.    Defendant Brookfield has, at all times relevant hereto, owned and operated Columbiana Centre Mall, which is a retail shopping mall offering a variety of retail stores, restaurants, and other services to the public.

15.    Defendant Brookfield regularly advertises and solicits the general public to come and enjoy shopping and/or dining experiences at the Columbiana Centre mall s. Defendant Brookfield affirmatively promotes its facility as a safe, secure, and family-friendly environment.

16.    Defendant Brookfield retained the services of AFS to provide security-related services on or about the premises of the Columbiana Centre Mall on and prior to April 16, 2022. AFS promotes and advertises its services to provide a safe and secure environment for the patrons of the Columbiana Centre Mall.

17.    Upon information and belief, Defendants have taken additional security measures at other similar facilities including increased signage, gun sniffing dogs, and other processes to control and deter crime that they did not utilize at Columbiana Centre Mall.

18.    Defendants refused to take reasonable measures to provide for the safety of its patrons, when they knew or should have known, that a dangerous environment existed.

### A.  Prior Incidents

19.    Prior to April 16, 2022, Defendants had actual or constructive knowledge of criminal activity generally at Columbiana Centre Mall, and more specifically, of armed patrons, and of delinquent activity arising from a longstanding problem with unsupervised juveniles at Columbiana Centre Mall.

20.    Indeed, on or around February 20, 2016, two young adults pulled their guns and fired shots in Columbiana Centre Mall.

21.    On March 31, 2016, a fight broke out when a group of 10 juveniles attacked two patrons.

22.    On August 29, 2016, a man robbed a jewelry store in the mall armed with a knife.

23.    On November 11, 2017, store clerks in Belk recognized three individuals shoplifting who had shoplifted on multiple occasions. At least one individual was armed and threatened the store clerks with his gun.

24.    On March 3, 2018, a fight broke out in the food court of Columbiana Centre Mall between juveniles.

25.    On March 8, 2018, law enforcement responded to a stabbing at Columbiana Centre Mall.

26.    On June 19, 2021, law enforcement responded to the attempted murder of a woman in her car in the Columbiana Mall parking lot and found a woman bleeding on the asphalt.

27.     In addition to the rampant criminal and delinquent activity described above, the

Defendants also had actual or constructive knowledge that the following criminal activity, among

others not specifically identified herein, had occurred at the Columbiana Centre Mall.

| Date | Crime |
|---|---|
| 8/1/2017 | Fighting |
| 8/6/2017 | Person w/ Gun |
| 8/17/2017 | Fight In Progress |
| 8/21/2017 | Assault |
| 9/12/2017 | Fight In Progress |
| 12/8/2017 | Vandalism Report |
| 12/20/2017 | Fight In Progress |
| 12/26/2017 | Fight In Progress |
| 1/13/2018 | Vandalism Report |
| 2/12/2018 | Fight w/ Weapon |
| 3/1/2018 | Assault |
| 4/13/2018 | Shots Fired in area |
| 5/16/2018 | Assault |
| 5/26/2018 | Vandalism |
| 6/9/2018 | Kidnapping |
| 8/4/2018 | Fight In Progress |
| 8/25/2018 | Vehicle Chase |
| 9/7/2018 | Fight In Progress |
| 9/9/2018 | Civil Disturbance weapon |
| 10/1/2018 | Civil Disturbance weapon |
| 10/3/2018 | Vandalism Report |
| 10/13/2018 | Person w/ Gun |
| 11/9/2018 | Fight Just Occurred |
| 11/23/2018 | Fight In Progress |
| 12/21/2018 | Fight Report |
| 12/22/2018 | Fight In Progress |
| 1/15/2019 | Fight In Progress |
| 2/6/2019 | Assault Report |
| 2/13/2019 | Fight In Progress |
| 3/10/2019 | Vandalism |
| 3/12/2019 | Shots Fired in area |
| 4/29/2019 | Fight In Progress |
| 4/29/2019 | Laceration |
| 4/29/2019 | Laceration |
| 6/29/2019 | Vandalism Report |
| 7/25/2019 | Larceny |
| 8/3/2019 | Civil Disturbance weapon |
| 11/18/2019 | Fight In Progress |

| | |
|---|---|
| 11/27/2019 | Assault Report |
| 11/28/2019 | Fight In Progress |
| 12/3/2019 | Person w/ Gun |
| 12/6/2019 | Fight In Progress |
| 12/20/2019 | Foot Chase |
| 12/28/2019 | Civil Disturbance weapon |
| 12/28/2019 | Civil Disturbance with Weapon |
| 12/31/2019 | Fight In Progress |
| 1/31/2020 | Assault Report |
| 2/16/2020 | Assault Report |
| 3/8/2020 | Stabbing (CFD) |
| 3/8/2020 | Assault w/Weapon |
| 5/11/2020 | Civil Disturbance weapon |
| 5/28/2020 | Fight Just Occurred |
| 5/29/2020 | Person w/ Gun |
| 7/11/2020 | Fight In Progress |
| 7/11/2020 | Fight In Progress |
| 8/29/2020 | Fight Just Occurred |
| 10/2/2020 | Strong Arm Robbery |
| 10/30/2020 | Vandalism Report |
| 11/12/2020 | Vandalism Report |
| 12/18/2020 | Vandalism Report |
| 12/21/2020 | Vandalism Report |
| 12/28/2020 | Vandalism Report |
| 12/30/2020 | Assault just Occurred |
| 3/6/2021 | Domestic w/ Weapon |
| 4/20/2021 | Fight In Progress |
| 5/1/2021 | Assault In Progress |
| 5/29/2021 | Civil Disturbance weapon |
| 6/2/2021 | Person w/ Gun |
| 7/10/2021 | Fight w/ Weapon |
| 7/24/2021 | Fight Just Occurred |
| 8/18/2021 | Fight In Progress |
| 12/3/2021 | Person w/ Gun |
| 12/10/2021 | Civil Disturbance weapon |
| 12/21/2021 | Fight Just Occurred |
| 1/21/2022 | Shooting Hit |
| 1/21/2022 | Gunshot Wound (CFD) |
| 1/22/2022 | Person w/ Gun |
| 1/29/2022 | Person w/ Gun |
| 4/16/2022 | Active Shooter – Gunshot Wound |

28.    Including and in addition to the above, the City of Columbia police department has over 100 incident reports regarding violent crimes occurring at the Columbiana Centre Mall over the last five years.

29.    Despite repeated, ongoing, and consistent violent incidents, Defendants have not adequately addressed the longstanding crime and safety issues.

30.    Employees of the mall, prior to the April 16, 2022 shooting, have repeatedly observed violent incidents, including firearm possession and brandishing.

31.    In light of these ongoing issues, security at Columbiana Centre was grossly inadequate at the time of the subject incident.

### B.  Customer Reviews

32.    Even Columbiana Centre's own patrons and the surrounding community had concerns about the safety at the Mall and made those concerns known through customer reviews:

    a.    **3 years ago**: "This place needs better security. My husband's vehicle got broken into [sic] in the d&b parking lot. Praise god he didn't want up on them when they were spilling his drink and stealing some change. This mall isn't safe anymore. If I didn't CC I would never go back. Put your kids on a leash too because my girlfriend said a stranger tried to snatch up her 3 year old. The security and cops are a joke at this place."

    b.    **6 years ago**: "Lots of people just hanging out and not shopping. The mall security is good for a laugh. Poorly managed. Over priced crappy stores. Malls are dying for a reason. Avoid this place. You are better off flushing your money down the commode."

    c.    **4 years ago**: "This place is terrible. There is a variety of shops, but Dave and Buster's has really made this place go downhill. Also mall is not safe, due to increase in predators."

    d.    **4 years ago**: "Someone stolen my bag and took al money..and security's person not support us [] [] after many requests thy didn't do anything."

    e.    **4 years ago**: "This area has really gone down hill. Didn't feel safe in the parking lot at all or leaving my car there."

f. **2 years ago**: "A bunch of teenagers everywhere. And no social distancing. Too large of a crowd considering covid 19"

g. **4 years ago**: "They have an only criminals can carry guns policy"

h. **1 year and 10 months ago**: "The mall security is a joke"

i. **3 years ago**: "Haven't went back since I heard a gunshot in the food court []"

j. **5 years ago**: "Security is terrible don't ask for help you probably won't get it!"

k. **5 years ago**: "To many young 'thugs' just hanging out."

l. **4 years ago**: "# dark not safe!! Parking lot no lights!!!!"

m. **6 years ago**: "Bad place"

n. **1 year and 5 month ago**: "Used to love the mall, sad its going downhill."

o. **1 year and 9 months ago**: "Getting way to crowded, young and hood for my taste. I'd rather just shop Amazon or buy direct."

p. **5 years ago**: "We got there and there was over 15 policemen around the food court. Heard they had three different fights in the last two hours of being there. This mall is becoming more and more dangerous. I read the news report of the hold up with a gun at the Victoria's Secret Last week. And its crazy"

q. **3 years ago**: "Used to be a nice mall, but does not attract the best crowd these days. Once you start having multiple shooting scares, I'm out."

r. **6 years ago**: "I'd give more stars if security was worth anything but they are not. I had my shopping bag lifted unknowingly when I set it down for a moment. Security was a joke, he was an elderly man, he basically said there is nothing I can do, we don't have any cameras. I'm thinking wait a minute in this day and age your telling me there are no cameras, he said yes that's what I'm telling you. Sorry it happened but nothing I can do. Incident happened after 260 purchase at Sephora inside JcPenny's. I was so ticket off and could have lost my cool if it wasn't for my daughter being there. This mall not store made any effort to get back to me. It was in fact a store across the US that sent me a gift card. Thank you JcPenny in Chino, California, it was done by that manager just because she wanted to take some of the sting away. Columbiana mall needs security, cameras, and customer service training."

s. **2 years ago**: "The once vibrant mall is waning. I don't feel safe in that area anymore."

t.  **5 years ago**: "It was a great place to shop, but watch your back these days."

u.  **3 years ago**: "Starting to get ghetto/trashy. Not safe to be at when it gets dark."

v.  **4 years ago**: "Pure chaos"

w.  **May 31, 2017**: Women, be careful when using the restroom. I went to he women's restroom and a man was coming out of a stall. He claimed that he just really needed to use the restroom. The men's restroom was not closed, nor was there a line. He walked creepily past me and went toward the men's restroom. I walked straight out. I know was in there looking at the women that were using the toilet. Sad thing is that there are no security cameras to keep him from doing this again. I will never return."

x.  **December 2, 2017**: "I used to enjoy this mall and area but I must say things have changed here significantly. It is not the cleanest, the store selection is somewhat limited, and the environment does not appear as safe as it once was. I was out here on Black Friday to shop and there were some things happening that didn't make me feel very safe. Crime has significantly increased here and in the general area as well. There were a number of police officers and security members but needless to say, I got what I needed and left as soon as possible."

## C. Witness Statements Regarding Lack of Security

33.  A current owner-operator of a kiosk in the Columbiana Centre Mall has been working at the mall for about ten years. This witness has observed fights between young people. He described mall security as no different than it was prior to the February 2016 shooting. The witness described efforts to make the mall more secure stopped after the head of security moved away. The witness remembered the former head of security attempting to convince the mall to install surveillance cameras for approximately three years.

34.  A frequent patron of Columbiana Centre Mall over the past few years explained that she stopped going to the mall at night, describing the mall as unsafe.

35.  The uncle of one of the shooters on April 16, 2022, described reoccurring problems with young men and drugs and gun violence at the mall, including his nephew. The uncle described Columbiana Centre Mall as "dead." He explained for that reason, the young men spend time at

Columbiana Centre Mall. He further explained that the young men carry their guns and do not care about the security guards or police.

36.    A frequent patron of Columbiana Centre Mall recalled growing up in Irmo, South Carolina. She described getting dropped off at Columbiana Centre Mall on the weekends to hangout. This witness explained that now she refuses to let her children go to the mall alone because it is not safe. This witness remembered the February 2016 shooting and described a lack of improvement in security since then. The witness expressed her belief that Columbiana Centre Mall allows loitering, and she does not believe adequate security measures have been implemented to protect her children.

37.    A current employee working at a kiosk in Columbiana Centre Mall described the mall security as abysmal and terrible at best. She described security as lacking with guards that walk around all day looking like they do not want to be there. This witness has observed fights in the mall once every two weeks, people stealing merchandise from stores, men harassing women, and people loitering in the mall, which she has reported to security. She recalled a group of young men asking her if she thought one could beat up the other—and they squared off as is they were going to fight. This witness described multiple occasions where guns were brought into the mall: a woman accidentally shot herself rummaging through her bag; and a woman pulling a gun out and handing it to her son. Despite not seeing patrons with guns herself, this witness described hearing young people say things to suggest they are carrying a gun.

38.    A seasonal employee who operates a kiosk in Columbiana Centre Mall every holiday season described mall security as "not the greatest" and lacking. The witness explained that there are three or four fights every season she works. The witness explained that no one had spoken to her about mall security, nor had anyone given her a phone number she can call for

security. She further explained that it is hard to find a security guard, as she described that she rarely saw security guards patrolling the mall.

39.    An employee who has worked at many stores at the Columbiana Centre Mall does not believe the security cameras in the mall are functional. This witness has been unable to get ahold of security in the past. She explained her belief that four security guards are on a shift at a time. Since she has worked at the mall, there have been no "active shooter" drills. Since the April 2022 shooting, there have been no communications from the Columbiana Centre Mall management or security office. The witness does not feel safe working at the mall.

40.    A current employee at a store in Columbiana Centre Mall has observed security guards walking around, describing them as nonchalant and seeming as though they did not want to be at the mall.

41.    A current employee at a store at the Columbiana Centre Mall described mall security as more formal and professional ten years ago when he started at the mall. Now, this witness described the security guards as failing to serve a function for the mall. Specifically, he has noticed that physical altercations are more likely to occur at certain stores. This witness believes that the security guards are aware of this and are reluctant to physically remove people fighting from the mall. This witness explained his belief that two mall security cameras were broken because the police requested security footage from individual stores instead of getting footage from the mall security office. Despite there being a police station about a half mile from the mall, this witness explained that he does not see police officers patrolling the mall. This witness has also seen repeat offenders of crimes committed in Columbiana Centre Mall come back into the mall.

42.    A witness who worked at Columbiana Centre Mall for 20 years explained that during her employment, security changed about every 3 years. This witness described a time when the mall did not have security cameras but had intentions of putting them in. She explained the room to be used for security camera monitoring was instead used as a storage room. The witness described weekends in the past where the mall had off-duty police officers patrolling the mall, and a police car parked at the entrance to the food court. The witness observed that security guards were not armed with guns.

43.    A witness owned a boutique in Columbiana Centre Mall for about a year. She described that while she worked there, she never experienced any security-related drills.

44.    A frequent patron at Columbiana Centre Mall explained she never saw a security guard in the 7 years she shopped at the mall. This witness refuses to go to the Mall and noted the lack of lighting during the nighttime hours.

45.    A current employee of a kiosk located in Columbiana Centre described mall security as continuing to lack over the last few years. At the start of her employment, the witness felt there was not much security. The witness felt the security guards failed to serve any function at the mall, and when security guards responded to incidents, they did not intervene, especially when guns were involved. The employee identified recent incidents of violence including: repeated physical altercations amongst guests, guest brandishing a firearm, and another patron killing herself with a weapon in just the last few years. The witness explained that mall management did not check on the witness or other workers following the April 16, 2022 shooting.

46.    A witness who has been a frequent patron of Columbiana Centre Mall since it opened described the mall as increasingly less safe over the years. This witness described not

feeling safe when she went to the mall by herself. She recalled seeing security vehicles in the parking lot but rarely saw security guards inside the mall.

47.     A witness who has been a patron of Columbiana Centre Mall for years described the security guards at the mall as worthless. She observed that the security guards appear to be too old to handle violent situations. This witness did not see security guards often but has observed some security guards driving around the parking lot.

48.     A current employee at a store in Columbiana Centre Mall described mall security as "nothing." This witness recalled seeing guards but stated that they were "lollygagging," further explaining that it appeared to her that the security guards did not take their job seriously.

## INJURIES TO PLAINTIFFS ON DAY OF SHOOTING

49.     Plaintiffs were severely injured from the violence created through the acts and omissions of Defendants, specifically the failure to address known safety risks.

50.     At the time of Plaintiffs' injuries, Plaintiffs were business invitees present at the Columbiana Centre Mall.

51.     On April 16, 2022, Plaintiffs had come to the mall to purchase Easter shoes for their young daughter in preparation for their anticipated Easter family pictures.

52.     Unknown to Plaintiffs, Columbiana Centre was exceptionally busy and crowded on April 16, 2022, partially due to the holiday weekend and festivities occurring at the mall.

53.     While walking through the mall, Mr. Morrison observed an altercation ahead of him. He then saw someone draw a gun and heard shots fired.

54.     Mr. Morrison tried to grab and cover his wife, but Ms. Campbell fell hard and immediately, so Mr. Morrison picked her up and carried her through gunfire, seeking cover in the GAP store in the mall.

55.    Ms. Campbell knew instantly from the tearing and burning sensation that she had been shot in the leg. The pain was excruciating.

56.    Mr. Morrison saw that his wife was in shock and that she was nearly losing consciousness. He was very concerned because she was pregnant at the time, she was bleeding, shot, and had fallen down hard on the ground.

57.    Someone inside the GAP store began yelling for everyone hiding in the store to run to the back-office area of the store. Mr. Morrison picked up his wife again and carried her to the back-office area placing her on a chair.

58.    Both Mr. Morrison and his wife, Ms. Campbell, started evaluating Ms. Campbell's condition and attempted to assure themselves the baby was safe.

59.    In the middle of their evaluation, Ms. Campbell noticed a significant amount of blood running down Mr. Morrison's leg. Mr. Morrison had also been shot.

60.    Mr. Morrison and Ms. Campbell were trapped and immobile in the back of the GAP store for what seemed like an eternity as they listened to screams, cries and stampeding throughout the mall.

61.    Eventually, law enforcement instructed everyone still in the mall to start migrating to the food court area because EMTs could not access the other parts of the mall. The Plaintiffs were paralyzed with fear, worried that if they left cover, they would be shot again.

62.    Eventually, Mr. Morrison attempted to transport his wife to the food court area, but he required assistance due to his own injuries. Bystanders had to push Mr. Morrison and his wife to the food court for treatment by the EMTs.

63.     Mr. Morrison and Ms. Campbell describe the scene at the food court as a "war zone" with blood everywhere, unrelenting screaming and crying, people laying in stretchers, and law enforcement marching around with assault rifles.

64.     Both Mr. Morrison and Ms. Campbell underwent, and continue to undergo, extensive medical treatment as a result of the shooting on April 16, 2022.

65.     The injuries and surrounding chaos in their immediate vicinity caused them severe emotional distress, especially as they both feared for the safety of their then unborn child.

66.     Mr. Morrison and Ms. Campbell continue to suffer mental and emotional distress from the events of that day.

## FOR A FIRST CAUSE OF ACTION
### Negligence/Gross Negligence/Recklessness as to Defendant Brookfield

67.     Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

68.     At all times mentioned herein, Defendant Brookfield owned, controlled, operated, and/or managed Columbiana Centre.

69.     At all times relevant, Defendant Brookfield had the legal duty to protect lawful invitees, including Plaintiffs, from reasonably foreseeable third-party criminal attacks. Furthermore, Defendant Brookfield had a legal duty to keep the premises in a state consistent with due regard for the safety of their lawful visitors, including Plaintiffs.

70.     At all times relevant hereto, Defendant Brookfield had a duty to exercise reasonable care to discover and monitor criminal activity by third persons, such as that set forth in the "Background Information" section above, likely to endanger the safety of lawful visitors to Columbiana Centre.

71.     Defendant Brookfield should have foreseen that the conditions at Columbiana Centre were such that the safety of lawful visitors might unreasonably be endangered, and such lawful visitors exposed to injury from criminal activity at Columbiana Centre.

72.     Defendant Brookfield had a reasonable opportunity to prevent, reduce, or otherwise control foreseeable third-party criminal activity likely to endanger the safety of lawful visitors to Columbiana Centre on, and before, April 16, 2022.

73.     Defendant Brookfield had a duty to take reasonable steps to prevent or control foreseeable third-party criminal activity likely to endanger the safety of lawful visitors to Columbiana Centre on and before April 16, 2022.

74.     Defendant Brookfield breached their duty owed to Plaintiffs by failing to exercise ordinary care to protect them and keep the premises in a reasonably safe condition on and before April 16, 2022.

75.     Additionally, at all times relevant, Defendant Brookfield contracted with AFS to provide security services for the common areas of Columbiana Centre Mall, including security in the common area where Plaintiffs were at the time of the shooting.

76.     By virtue of this contractual relationship, AFS was an agent of Defendant Brookfield, as such, Defendant Brookfield is also liable for the acts and omissions of AFS done within the scope of this agency.

77.     Defendant Brookfield breached their duty to the Plaintiffs by recklessly and/or negligently failing to:

    a.  failing to provide adequate security on the subject premises;
    b.  failing to adequately assess the need for security on the subject premises;
    c.  failing to reasonably investigate and or discover the history of criminal activity at the subject premises;
    d.  failing to monitor activity on the premises that was potentially harmful to others;

e.  knowingly subjecting lawful visitors of the premises to an unreasonable risk of serious physical harm;

f.  failing to exercise reasonable care to provide a safe environment for the lawful visitors of the premises;

g.  failing to provide proper and adequate surveillance of the premises;

h.  permitting or otherwise ignoring criminal activity on the premises;

i.  failing to properly train their employees, servants, and agents in recognizing and correcting dangerous conditions and risks to lawful visitors of the premises;

j.  failing to monitor the performance of their security personnel to ensure the safety of lawful visitors on the premises;

k.  failing to monitor the performance of their contractors hired to provide security on the premises;

l.  failing to hire competent security personnel to ensure the safety of lawful visitors on the premises;

m.  failing to implement and follow security measures commensurate with the recommendations of security experts and consultants;

n.  failing to remove delinquent, dangerous, and unauthorized persons from the premises;

o.  failing to have adequate patrols on the premises so as to deter or otherwise control dangerous activity on the premises;

p.  failing to warn lawful visitors of the premises, including Plaintiffs of the risks of criminal activity on the premises;

q.  failing to follow the instructions and/or recommendations of law enforcement;

r.  failing to properly budget or allocate resources so that adequate security measures could be implemented and maintained;

s.  failing to maintain a policy, procedure, or system of investigating reporting, and warning of criminal activity on the premises;

t.  permitting unauthorized persons to come onto the premises with weapons;

u.  failing to restrict access to the premises on April 16, 2022 to only those persons who were lawfully permitted on the premises;

v.  maintaining, inspecting, securing, patrolling, and managing the premises; and

w.  all other acts of negligence as may be shown at the time of trial.

78.    As a direct and proximate result of Defendant Brookfield's failure to provide reasonable security measures, Plaintiffs suffered severe physical injuries, severe emotional injuries, physical pain and suffering and other damages.

79.    As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from professional standards of care by Defendant Brookfield, Plaintiffs have suffered damages described herein, for which the Plaintiffs are entitled to recover actual and punitive damages.

80.     Defendant Brookfield had knowledge, both actual and constructive, of the need to properly maintain, secure, inspect, patrol and manage said premises, but failed to exercise ordinary care.

81.     Defendant Brookfield was negligent in failing to maintain, inspect, secure, patrol, and manage the premises, thereby creating an unreasonable risk of injury to lawful visitors, including Plaintiffs.

82.     Defendant Brookfield knew of or, with the exercise of due care for the safety of lawful visitors, should have known of the dangerous and hazardous conditions arising from criminal activity existing on the premises combined with the failure to maintain, inspect, secure, patrol, and manage the premises, and that said conditions were likely to result in serious injuries to lawful visitors, including Plaintiffs.

83.     Defendant Brookfield had actual and constructive knowledge of widespread dangerous, reckless or negligent activity existing on and around Columbiana Centre prior to the subject incident.

84.     Because Defendant Brookfield had knowledge of or, in the exercise of reasonable care, should have had knowledge of the dangerous environment of the premises, Defendant Brookfield is liable for the negligent supervision, hiring, training, and retention of their employees and for the entrustment of the premises to their partners, agents and employees.

85.     Had Defendant Brookfield exercised reasonable care in preventing or controlling the foreseeable criminal activity of third-parties, injury to plaintiffs could have been prevented.

86.     Defendant Brookfield represented to the lawful visitors and to the community at large that the premises were properly maintained and reasonably safe.

87.    Each of the foregoing tortious acts and omissions constitute an independent act of negligence on the part of Defendant Brookfield and one or more or all of the above stated acts and omissions was a proximate cause of the injuries to the plaintiffs.

88.    The injuries suffered by the Plaintiffs were the direct and proximate result of the acts and omissions of Defendant Brookfield. But for said acts and omissions, the Plaintiffs would not have been injured.

### SECOND CAUSE OF ACTION
### Negligence/Gross Negligence/Recklessness as to Defendant AFS

89.    Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

90.    At all times mentioned herein, Defendant AFS was hired to perform security-related services at Columbiana Centre.

91.    At all times relevant, Defendant AFS had the legal duty to protect lawful mall visitors, including Plaintiffs, from reasonably foreseeable third-party criminal attacks. Furthermore, Defendant AFS had a legal duty to keep the premises in a state consistent with due regard for the safety of their lawful visitors, including Plaintiffs.

92.    At all times relevant hereto, Defendant AFS had a duty to exercise reasonable care to discover and monitor criminal activity by third persons, such as that set forth in the "Background Information" section above, likely to endanger the safety of lawful visitors to Columbiana Centre.

93.    Defendant AFS should have foreseen that the conditions at Columbiana Centre were such that the safety of lawful visitors might unreasonably be endangered, and such lawful visitors exposed to injury from criminal activity at Columbiana Centre.

94.    Defendant AFS had a reasonable opportunity to prevent, reduce, or otherwise control foreseeable third-party criminal activity likely to endanger the safety of lawful visitors to Columbiana Centre on, and before, April 16, 2022.

95.     Defendant AFS had a duty to take reasonable steps to prevent or control foreseeable third-party criminal activity likely to endanger lawful visitors to Columbiana Centre on and before April 16, 2022.

96.     Defendant AFS breached their duty owed to Plaintiffs by failing to exercise ordinary care to protect them and keep the premises in a reasonably safe condition on and before April 16, 2022.

97.     Plaintiffs were third-party beneficiaries of Defendant AFS' contract and/or agreement to provide security-related services at Columbiana Centre.

98.     The security role and function undertaken by AFS included responsibility for protecting the mall's business invitees, such as the Plaintiffs, from assaults by third persons and the resulting chaos from such an assault.

99.     On April 16, 2022, Defendants negligently failed to provide reasonable security in the common areas to include the area where Plaintiffs were injured at the time of the shooting.

100.    On information and belief, on or about April 16, 2022, AFS failed to perform its duties pursuant to its agreement with Defendant Brookfield.

101.    Defendant AFS breached their duty to the Plaintiffs by recklessly and/or negligently failing to:

  a.  Failing to provide adequate security on the premises;
  b.  Knowingly subjecting lawful visitors of the premises to an unreasonable risk of serious physical harm;
  c.  Failing to exercise reasonable care to provide a safe environment for the lawful visitors of the premises;
  d.  Failing to provide proper and adequate surveillance of the premises;
  e.  Permitting or otherwise ignoring criminal activity on the premises;
  f.  Failing to properly train its employees, servants, and agents in recognizing and correcting dangerous conditions and risks to lawful visitors of the premises;
  g.  Failing to monitor the performance of its security personnel to ensure the safety of lawful visitors on the premises;
  h.  Failing to monitor the performance of its contractors hired to provide security

on the premises;

i.  Failing to hire competent security personnel to ensure the safety of lawful visitors on the premises;

j.  Failing to implement and follow security measures commensurate with the recommendations of security experts and consultants;

k.  Allowing unaccompanied children, teens and juveniles on the premises, contrary to the standard of practice and/or standard of care for a commercial shopping mall;

l.  Failing to implement and enforce a curfew and/or escort program at the subject premises;

m.  Failing to remove delinquent, dangerous and unauthorized persons from the premises;

n.  Failing to adequately control a crowd of dangerous persons;

o.  Failing to have adequate patrols on the premises so as to deter dangerous activity on the premises;

p.  Failing to warn lawful visitors of the premises, including Plaintiffs, of the risks of criminal activity on the premises;

q.  Failing to maintain a policy, procedure, or system of investigating, reporting, and warning of criminal activity on the premises;

r.  Permitting unauthorized and/or underaged persons to come onto the premises with weapons;

s.  Failing to restrict access to the premises on April 16, 2022 to only those persons who were lawfully permitted on the premises; and

t.  All other acts of negligence as may be shown at the time of trial.

102.    As a direct and proximate result of the Defendant AFS' failure to provide reasonable security measures, Plaintiffs suffered severe physical injuries, severe emotional injuries, physical pain and suffering and other damages.

103.    As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from professional standards of care by Defendant AFS, Plaintiffs have suffered damages described herein, for which the Plaintiffs are entitled to recover actual and punitive damages.

104.    Defendant AFS had knowledge, both actual and constructive, of the need to properly maintain, secure, inspect, patrol and manage said premises, but failed to exercise ordinary care.

105.    Defendant AFS was negligent in failing to maintain, inspect, secure, patrol, and manage the premises, thereby creating an unreasonable risk of injury to lawful visitors, including Plaintiffs.

106.    Defendant AFS knew of or, with the exercise of due care for the safety of lawful visitors, should have known of the dangerous and hazardous conditions arising from criminal activity existing on the premises combined with the failure to maintain, inspect, secure, patrol, and manage the premises, and that said conditions were likely to result in serious injuries to lawful visitors, including Plaintiffs.

107.    Defendant AFS had actual and constructive knowledge of widespread dangerous, reckless or negligent activity existing on and around the premises prior to the subject incident.

108.    Because Defendant AFS had knowledge of or, in the exercise of reasonable care, should have had knowledge of the dangerous environment of the premises, AFS is liable for the negligent supervision, hiring, training, and retention of their employees.

109.    Had AFS exercised reasonable care in preventing or controlling the foreseeable criminal activity of third-parties, injury to plaintiffs likely could have been prevented.

110.    Each of the foregoing tortious acts and omissions constitute an independent act of negligence on the part of Defendant AFS and one or more or all of the above stated acts and omissions was a proximate cause of the injuries to the plaintiffs.

111.    The injuries suffered by the Plaintiffs were the direct and proximate result of the acts and omissions of Defendant AFS. But for said acts and omissions, the Plaintiffs would not have been injured.

**THIRD CAUSE OF ACTION**
**Negligent Infliction of Emotional Distress as to All Defendants**

112.    Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

113.    Defendants' negligent acts and omissions caused serious physical injury to Plaintiffs, and other patrons of Columbiana Centre by way of gunshot wounds, trampling, and stampeding.

114.    Plaintiffs were bystanders in close proximity to the shooting and subsequent serious physical injuries of each other and the other injured patrons.

115.    Plaintiffs are married, and therefore Plaintiffs are closely related as family members.

116.    Plaintiffs contemporaneously perceived the incident while it was happening.

117.    Plaintiffs witnessed the bullets strike and seriously injure one another, including Ms. Campbell who was pregnant with Mr. Morrison's child at the time of the subject incident.

118.    Plaintiffs suffered emotional distress that has manifested, and continues to manifest, itself through physical symptoms capable of objective diagnosis including severe anxiety, withdrawal, and post-traumatic stress disorder which will be established by expert testimony.

## JURY DEMAND

119.    Plaintiffs hereby demand a trial by jury on all claims so triable.

## REQUEST FOR RELEIF

120.    Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

121.    Plaintiffs request that this Court enter a judgment against the Defendants in an amount to be determined by the jury and sufficient to compensate the Plaintiffs for the injuries and trauma suffered and continuing to be suffered.

122.    Plaintiffs request that this Court enter a judgment against each Defendant and an award of punitive damages

123.    Plaintiffs request that this Court award them pre-judgment interest and costs incurred in bringing this action, and any additional relief that this Court deems just and proper.

Respectfully submitted,

**MICKELSEN DALTON LLC**

BY:    *s/Daniel R. Dalton*
Daniel R. Dalton, Esq. (Fed ID 13152)
25 Society Street
Charleston, South Carolina 29401
T: (843) 804-0428
F: (843) 695-7777
danny@mickelsendalton.com
*Attorneys for Plaintiffs*

Charleston, South Carolina
Dated: April 26, 2023